IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

```
DEON MAURICE PARKER,            *
                                *
     Plaintiff,                 *
                                *
     v.                         *      CV 416-126
                                *
THE MAYOR AND ALDERMEN OF THE   *
CITY OF SAVANNAH; THE CHATHAM   *
COUNTY BOARD OF COMMISSIONERS;  *
CITY OF POOLER, GA; AGENT K.    *
WRIGHT, individually and in her *
official capacity; CORPORAL     *
MICHAEL SWORDS, individually    *
and in his official capacity;   *
and JOHN DOES 1-5, individually *
and in their official           *
capacities,                     *
                                *
     Defendants.                *
```

**O R D E R**

Presently before the Court is: (a) Defendants The Chatham County Board of Commissioner ("Chatham County") and Agent K. Wright's motion for summary judgment (doc. 29); (b) Defendant The Mayor and Aldermen of the City of Savannah's ("City of Savannah") motion for summary judgment (doc. 32); and (c) Defendants City of Pooler, GA ("City of Pooler") and Corporal Michael Swords' motion for summary judgment (doc. 34). The Clerk of Court gave Plaintiff timely notice of these summary judgment motions and the summary judgment rules, of the right to

file affidavits or other materials in opposition, and the consequences of default. (Docs. 30, 33, 35.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied. Plaintiff filed a response in opposition to each summary judgment motion and Defendants City of Savannah, City of Pooler, and Swords filed replies in support of their respective motions. (Docs. 36, 37, 38, 41, 43.) The time for filing materials in opposition has expired, and the motions are ripe for consideration. Upon consideration of the record evidence, relevant law, and the parties' respective briefs, Defendants' motions are **GRANTED IN PART**.

## I. BACKGROUND

On July 2, 2014, Savannah-Chatham Metropolitan Police Department's ("SCMPD") Officer Keri McNaughton responded to a possible robbery at a bank in Savannah, Georgia. (Aff. of Keri McNaughton, Doc. 32-3, at 36-42, ¶ 10 & Ex. A.) Upon arriving at the bank, Officer McNaughton was advised by SCMPD Officer Matthew Nelson that he had detained an individual identifying himself as "Deon Parker" (the "Suspect") in the rear seat of his patrol car.[1] (Id.) After obtaining the Suspect's consent,

---

[1] The Suspect was actually non-party Mr. Jamie Parker. (Dep. of Deon Parker, Doc. 22-1, at 25, 97-98.) Jamie Parker is Plaintiff's brother. (Id. at 14.) Defendants maintain – and Plaintiff does not dispute – that Jamie Parker never revealed his true identity during his interactions with the law

Officer McNaughton searched his vehicle and discovered three bags containing a substance believed – and later tested and confirmed – to be cocaine. (Id.) Accordingly, Officer McNaughton detained the Suspect for suspicion of possession of a controlled substance with intent to distribute and transported him to a nearby SCMPD precinct. (Id. ¶¶ 10-11 & Ex. A.)

Upon arriving at the nearby SCMPD precinct, Officer McNaughton was met by two agents from the Savannah-Chatham Counter Narcotics Team ("SCCNT") and advised that they would be adopting the Suspect's case, at which point Officer McNaughton released the Suspect into their custody. (Id. ¶¶ 13-15 & Ex. A.) After the Suspect was transferred to SCCNT's custody, he was interviewed by SCCNT agent Defendant Kristen Wright. (Aff. of Kristen Wright, Doc. 29-1, ¶ 7.) According to Defendant Wright, she was assigned to interview the Suspect because he "wished to become a confidential informant" in the hopes that the charges to be brought against him would be dropped. (Id. ¶¶ 8-9.) The Suspect "was not booked, arrested, photographed or fingerprinted, as the policies and procedures of drug investigations dictate."[2] (Id. ¶ 10.) Rather, he was released with instructions "to appear at [SCCNT] headquarters to begin

---

enforcement officers identified herein and that his true identity was otherwise unknown to said law enforcement officers. (Id. at 25-27; McNaughton Aff. ¶¶ 17-18.)

[2] Defendant Wright did, however, perform searches of the National Crime Information Center, Georgia Crime Information Center, and Chatham County's databases using the name and date of birth provided to her (i.e., Plaintiff's name and date of birth), which revealed no record of Plaintiff having been previously arrested. (Wright Aff. ¶¶ 11-12.)

the confidential informant process." (Id. ¶ 13.) When the Suspect subsequently failed to appear at SCCNT headquarters, Defendant Wright swore out a warrant on or about August 11, 2014, based upon the information obtained at the time of the Suspect's detainment on July 2, 2014 - *i.e.*, a warrant for the arrest of "Deon Parker" for possession of a controlled substance with intent to distribute (the "Warrant"). (Id. ¶¶ 14-16.)

On June 14, 2015, Defendant Michael Swords of the City of Pooler Police Department was traveling behind a black Pontiac Grand Am while on routine patrol. (Dep. of Deon Parker, Doc. 22-1, at 33, 101, 131-32.) A tag search of the Grand Am's license plate showed that the registered owner (*i.e.*, Plaintiff) had an active outstanding warrant for his arrest (*i.e.*, the Warrant). (Id. at 100-01, 132.) Defendant Swords continued to follow Plaintiff until he turned into a convenience store's parking lot and parked his vehicle. (Id. at 33, 132.) When Plaintiff exited his car, Defendant Swords detained Plaintiff and advised him that there was an active warrant for his arrest.[3] (Id. at 33-36, 132.) Defendant Swords then confirmed the Warrant's validity via SCMPD's records department. (Id. at 132.) Despite the protests of Plaintiff and the passenger in the Grand Am, Arnette Singleton, that Defendant Swords was arresting the wrong person and should instead be arresting

---

[3] Before detaining Plaintiff, Defendant Swords asked Plaintiff if he was "Deon Parker," to which Plaintiff responded in the affirmative. (Parker Dep. at 33.)

4

Plaintiff's brother, Jamie Parker, Defendant Swords placed Plaintiff under arrest for the crime set forth in the Warrant and transported him to the Chatham County Detention Center ("CCDC"). (Id. at 32-38, 132.)

Upon arriving at the CCDC, Plaintiff was processed by jail officials and placed in a holding cell with approximately nine other individuals. (Id. at 38-51.) While being processed, Plaintiff continued to profess his innocence. (Id. at 40-41.) When jail officials fingerprinted Plaintiff, they discovered that Plaintiff's fingerprints were not in the system. (Id. at 45.) According to Plaintiff, upon making this discovery, jail officials stated to Plaintiff that someone had "made a mistake" in arresting him but that there was nothing they could do until Plaintiff went before the judge the following morning.[4] (Id. at 45-48.)

On the afternoon of June 15, 2015, Plaintiff made his first appearance before the Recorder's Court of Chatham County via video feed from the CCDC. (Id. at 51-52.) After the charges against Plaintiff were read, Defendant Wright informed the court that a mistake had been made and that Plaintiff was not the individual she had sought under the Warrant. (Id. at 52-54;

---

[4] According to Plaintiff, a jail official processing Plaintiff's information also noticed that his social security number did not match up with the one on record. (Parker Dep. at 49.) Plaintiff contends that Defendant Swords walked into the room shortly after this discovery and that the jail official told Defendant Swords that he had arrested the wrong individual; Defendant Swords allegedly stated in response that Plaintiff had indeed informed him that he had arrested the wrong individual, but that there was nothing he could do. (Id.)

5

Wright Aff. ¶¶ 17-18.) Accordingly, the presiding judge dismissed the charges against Plaintiff and ordered his release; Plaintiff was discharged from the CCDC at approximately 11 p.m. that same evening. (Parker Dep. at 54, 58, 103-04, 130; Wright Aff. ¶ 19.)

On or about May 2, 2016, Plaintiff filed a complaint in the State Court of Chatham County, Georgia, alleging constitutional violations under 42 U.S.C. § 1983 and state-law claims.[5] Defendants Wright and Chatham County removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1367, and 1441. Defendants now move for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259, 1260 (11th Cir. 2004); FED. R. CIV. P. 56(c). The "purpose of summary judgment is

---

[5] *Deon Maurice Parker v. The Mayor and Aldermen of the City of Savannah, et al.*, State Court of Chatham County, Georgia, Civil Action No. STCV16-00637. (Doc. 1, at 4-12.)

6

to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record before the court] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment by demonstrating that there is indeed a genuine issue as to the material facts of its case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of those material facts "is 'genuine' . . . [only] if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. Matsushita, 475 U.S. at 587. The Court must also avoid weighing conflicting evidence. Anderson, 477 U.S. at

7

255; McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 934 (11th Cir. 1987). Nevertheless, the non-moving party's response to the motion for summary judgment must consist of more than conclusory allegations, and a mere "scintilla" of evidence will not suffice. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990); Pepper v. Coates, 887 F.2d 1493, 1498 (11th Cir. 1989). "The non-moving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" Bryant v. Dougherty Cty. Sch. Sys., 382 F. App'x 914, 917 (11th Cir. 2010) (citing Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986))).

## III. DISCUSSION

In his complaint, Plaintiff raises four primary claims: (1) a constitutional violation under § 1983; (2) a state-law negligence claim; (3) a state-law wrongful arrest claim; and (4) a state-law false imprisonment claim.[6] The Court addresses each in turn.

### A. Plaintiff's 42 U.S.C. § 1983 Claims

Under Section 1983, individuals may recover money damages from "[e]very person who, under color of any statute, ordinance,

---

[6] Plaintiff also seeks punitive damages and attorney's fees. (Doc. 1-1, at 10.)

regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983; see also Wyatt v. Cole, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." (citing Carey v. Piphus, 435 U.S. 247, 254-57 (1978))). "A municipality or other local government may be liable under this section if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson, 563 U.S. 51, 60 (2011) (citations omitted). Local governments, however, are responsible only for "their own illegal acts" and "are not vicariously liable under § 1983 for their employees' actions." Id. (internal quotations and citations omitted). Accordingly, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury."[7] Id. at 60-61.

---

[7] "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 563 U.S. at 61 (citations omitted).

9

### 1. Defendants Swords and City of Pooler

Plaintiff contends that Defendants Swords and City of Pooler unconstitutionally deprived Plaintiff of his procedural due process rights under the Fourteenth Amendment by "wrongfully arrest[ing]" Plaintiff pursuant to the Warrant "without proper policies regarding how to properly determine whether a warrant is not only facially valid, but substantively accurate."[8] (Doc. 37-1, at 6; see also id. at 5 ("The policies, practices and customs of the City of Savannah, City of Pooler and Chatham County regarding flipping criminals into confidential informants and executing search warrants deprived [Plaintiff] of his liberty [without due process].").)

"An individual has a federally protected right to be free from unlawful arrest and detention resulting in a significant restraint of liberty and violation of this right may be grounds for suit under 42 U.S.C. § 1983." Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 278 (5th Cir. 1992) (citations omitted); see also Chapman v. City of Atlanta, 192 F. App'x 922, 924 (11th Cir. 2006) ("The cause of action for mistaken arrests

---

[8] (See also Doc. 1-1 ¶ 43 ("The failure of the Defendant(s) to properly screen, train and supervise its agents and police officers and its subsequent decision to seek the arrest of [Plaintiff] for a crime which he did not commit deprived Plaintiff of his rights secured under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution. These violations include, but are not limited to: [(a)] Failing to properly investigate police officers before hiring them; [(b)] Failing to train its police officers to investigate before testifying under oath; [(c)] Failing to institute safety measures to ensure innocent citizens are not wrongfully detained and arrested[; and (d)] Failing to acquire proper information from a suspect before releasing them.").)

sounds in the Fourth Amendment."). "An arrest or detention may be unlawful if it is accomplished without due process of law as required by the Constitution." Id. (citations omitted). Police officers are therefore required to make a determination of probable cause before any significant pretrial restraint of liberty. Id. (citations omitted); see also Baker v. McCollan, 443 U.S. 137, 142 (1979) ("By virtue of its 'incorporation' into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty."); Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004) ("The existence of probable cause at the time of arrest . . . constitutes an absolute bar to a section 1983 action for false arrest." (citations omitted)).

A law enforcement officer has probable cause to arrest "if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime." Duckett, 950 F.2d at 278; see also Harvey v. State, 469 S.E.2d 176, 178 (Ga. 1996) ("If, when the arrest is made, the facts and circumstances known to the arresting officer are sufficient to warrant a prudent person in believing that the accused had committed or is committing an offense, the warrantless arrest passes constitutional muster." (citations omitted)). Probable cause also exists where a law

enforcement officer learns of a warrant for a suspect's arrest from the National Crime Information Center or other reliable source. United States v. Roper, 702 F.2d 984, 989 (11th Cir. 1983). Further, when a law enforcement official has "probable cause to arrest one party, and . . . reasonably mistake[s] a second party for the first party, then the arrest of the second party is a valid arrest." Rodriguez v. Farrell, 280 F.3d 1341, 1345-46 (11th Cir. 2002) (citing Hill v. California, 401 U.S. 797, 802 (1971)); see also Chapman, 192 F. App'x at 925 ("Because Chapman was arrested and held pursuant to a valid arrest warrant and because she was released from custody in less than 24 hours, she was not entitled to more process to review her claims of innocence in the face of the mistaken arrest."). "When the facts are not in dispute, whether probable cause existed is a question of law, and summary judgment is appropriate." Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990) (citations omitted).

The Supreme Court's opinion in the matter of Baker is instructive to the resolution of the instant dispute. In Baker, a suspect masquerading as his brother was arrested on narcotics charges. Baker, 443 U.S. at 140-41. When booked, the suspect identified himself as his brother and was released on bail. Id. at 141. A warrant was later issued for the arrest of the suspect in the name of the suspect's brother. Id. Police

stopped the suspect's brother for a traffic violation and, because of the warrant, arrested him. Id. Three days later, after discovering their mistake, police released the brother. Id. The brother eventually brought suit under Section 1983. Id. In denying the brother's claim, the Supreme Court stated:

> Whatever claims this situation might give rise to under state tort law, we think it gives rise to no claim under the United States Constitution. Respondent was indeed deprived of his liberty for a period of days, but it was pursuant to a warrant conforming, for purposes of our decision, to the requirements of the Fourth Amendment. Obviously, one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment. For the Constitution likewise guarantees an accused the right to a speedy trial, and invocation of the speedy trial right need not await indictment or other formal charge; arrest pursuant to probable cause is itself sufficient. We may even assume, *arguendo*, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of liberty without due process of law. But we are quite certain that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation.
>
> Respondent's innocence of the charge contained in the warrant, while relevant to a tort claim of false imprisonment in most if not all jurisdictions, is largely irrelevant to his claim of deprivation of liberty without due process of law. The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of

action for every defendant acquitted — indeed, for every suspect released. Nor are the manifold procedural protections afforded criminal defendants under the Bill of Rights without limits. Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person.

The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished without due process of law. A reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers — all of whom may be potential defendants in a § 1983 action — is entirely consistent with due process of law. Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

. . . .

Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles. Just as medical malpractice does not become a constitutional violation merely because the victim is a prisoner, false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official. Having been deprived of no rights secured under the United States

14

> Constitution, respondent had no claim cognizable under § 1983.

Id. at 144-46 (internal quotations, citations, alterations, and footnotes omitted).

Here, there is no dispute regarding the material facts. Plaintiff's brother, masquerading as Plaintiff, was detained for possession of a controlled substance with intent to distribute when bags containing cocaine were found in his possession. After being released and failing to appear as directed, a warrant was issued for the arrest of Plaintiff's brother in Plaintiff's name. When Plaintiff was later identified as the subject of the warrant by Defendant Swords, Plaintiff was arrested. As soon as the mistaken identity was discovered by Defendant Wright at Plaintiff's initial appearance before the Chatham County Recorder's Court, the claims against Plaintiff were dropped and he was released later that night. Notably, Plaintiff was discharged less than forty-eight hours after being arrested. Under the totality of the circumstances, the Court concludes that: (i) probable cause existed to seek/issue a warrant for the arrest of Plaintiff's brother; (ii) Plaintiff's arrest was made pursuant to a reasonable mistake; and (iii) he was discharged without unreasonable delay upon the discovery of that mistake. Moreover, Plaintiff has failed to introduce any evidence demonstrating a material issue of fact or other basis upon which a reasonable factfinder could reach a contrary

15

conclusion. Therefore, as a matter of law, no constitutional violation occurred via his arrest or detention. Having been deprived of no rights secured under the Constitution, Plaintiff has no claim cognizable against Defendants Swords or the City of Pooler under Section 1983.

2. Defendants Wright, City of Savannah, and Chatham County

Plaintiff also contends that Defendants Wright, City of Savannah, and Chatham County have unconstitutionally deprived Plaintiff of his procedural due process rights. (See Doc. 36-1, at 8-9; Doc. 38-1, at 5-7.) Notably, however, none of these Defendants actually arrested Plaintiff. Rather, their relation to this case is, at best, limited to requesting the Warrant that eventually led to Plaintiff's arrest. Accordingly, while Plaintiff's exact theory for imposing liability upon these Defendants is murky,[9] the Court interprets Plaintiff's argument as being that the policy allegedly held and/or enforced by these Defendants to not book, arrest, photograph, or fingerprint suspects who intend to become confidential informants created an

---

[9] (See, e.g., Doc. 36-1, at 8-9 ("Defendants have asked the [C]ourt to grant summary judgment against Plaintiff's due process claims by conveniently overstepping the fact that the true culprit in this case was not booked, arrested, photographed or fingerprinted, as the policies and procedures of drug investigations dictate. . . . Suffice it to say, there are genuine issues as to what policymaker(s) of the City of Savannah and/or Chatham County were a moving force behind the implementation of the policy which deters local government officials from collecting identifying information from individuals arrested for narcotics and then flipped into confidential informants. Thus the City of Savannah and Chatham County are liable under § 1983 for defective training or policies regarding the Savannah Chatham Metro Police Department and Chatham County Narcotics Team."); Doc. 38-1, at 5-6 (same); see also fn.8, supra.

unnecessary danger of unlawful arrest and, consequently, a constitutional violation.

"[I]t is well-established that a constitutional violation arises when an officer signs a probable cause affidavit which no reasonable well-trained officer would have believed established probable cause." Malley v. Briggs, 475 U.S. 335, 345 (1986) ("If such was the case, the application for the warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest."). Similarly, "the Constitution prohibits an officer from making perjurious or recklessly false statements in support of a warrant." Kelly v. Curtis, 21 F.3d 1544, 1554 (11th Cir. 1994) (citing Franks v. Delaware, 438 U.S. 154, 156 (1978)); but see id. at 1554-55 ("At the same time, we have explicitly limited the Franks rule to cases of perjurious or recklessly false statements or omissions made by a police officer in support of a warrant; the rule does not apply to negligent misrepresentations or omissions. . . . When the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a truthful showing. This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be

'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." (internal quotations, citations, and alterations omitted)).

Here, Plaintiff has failed to introduce any evidence showing that Defendant Wright had any doubts that the Suspect was not who he purported to be or that a reasonable officer in Defendant Wright's position would have otherwise questioned his identity. See Tillman v. Coley, 886 F.2d 317, 321 (11th Cir. 1989) ("Although the law does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person, due process does require that some steps be taken to eliminate doubts concerning identity that exist prior to obtaining the warrant and to arrest." (internal quotations and citations omitted)). Plaintiff has also failed to introduce any evidence that Defendant Wright lacked probable cause to seek a warrant for the arrest of the Suspect and/or that she acted maliciously or recklessly when she sought the Warrant. See Rodriguez, 280 F.3d at 1345-46; Kelly, 21 F.3d at 1554-55. Indeed, there has been no showing that Defendant Wright's application for the Warrant in Plaintiff's name was outside the scope of a reasonable mistake or negligent misrepresentation. Accordingly, Plaintiff has failed to demonstrate a constitutional violation. See Baker, 443 U.S. at 144-46. Moreover, because Plaintiff has failed to demonstrate

that he suffered a violation of his constitutional rights as a result of the issuance of the Warrant and/or his arrest pursuant thereto, no municipal liability exists. See McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) ("[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.").[10] Accordingly, Defendants are entitled to summary judgment on Plaintiff's federal law claims.

## B. Plaintiff's State Law Claims

In addition to his Section 1983 claims, Plaintiff also asserted several state law claims over which the Court has supplemental jurisdiction. 28 U.S.C. § 1367. Having determined that Defendants are entitled to summary judgment on Plaintiff's federal claims, however, the Court declines to exercise jurisdiction to resolve Plaintiff's state law claims. See 28 U.S.C. § 1367(c) (indicating that a court may decline to exercise supplemental jurisdiction if it has dismissed all claims under which it has original jurisdiction); see also Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed

---

[10] Because Plaintiff's claims under Section 1983 fail, so does his request for attorney's fees pursuant to 42 U.S.C. § 1988. See 42 U.S.C. § 1988(b).

prior to trial.") (citing L.A. Draper & Son v. Wheelabrator-Frye, Inc., 735 F.2d 414, 428 (11th Cir. 1984)); McDuffie v. Broward County, 654 F. App'x 408, 411 (11th Cir. 2016) ("[F]ederal district courts in removal cases must remand, rather than dismiss, state claims over which they decline to exercise supplemental jurisdiction." (citations omitted)).

## IV. CONCLUSION

Based upon the foregoing and due consideration, the Court concludes that Defendants are entitled to summary judgment on all of Plaintiff's federal law claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. See 28 U.S.C. § 1367(c)(3). Accordingly, Defendants' respective motions for summary judgment (docs. 29, 32, 34) are **GRANTED IN PART**.[11] The Clerk is directed to **REMAND** this case to the State Court of Chatham County.[12] See McDuffie, 654 F. App'x at 411.

**ORDER ENTERED** at Augusta, Georgia, this 13th day of July, 2017.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[11] *i.e.*, summary judgment is granted in Defendants' favor on all federal law claims.
[12] *Deon Maurice Parker v. The Mayor and Aldermen of the City of Savannah, et al.*, State Court of Chatham County, Georgia, Civil Action No. STCV16-00637.

20